### R. C. GUY v. STATE.

No. A-5928.  Opinion Filed May 15, 1926.
(246 Pac. 481.)

Tom W. Cheatwood, for plaintiff in error.

The Attorney General and Houston B. Teehee, Asst. Atty. Gen., for the State.

BESSEY, P. J.  The plaintiff in error, herein referred to as the defendant, was charged and convicted of an attempt to rape, committed against the person of Jewel Wehrhan, a female of the age of 9 years.  By the verdict of the jury his punishment was assessed at confinement in the penitentiary for a term of 7½ years.

The evidence on the part of the state discloses that at about 5 o'clock of the evening of Tuesday, March 31, 1925, the prosecutrix, a little girl 9 years old, and her sister, Zelma Wehrhan, 11 years old, were on their way

to a city park in Capitol Hill. When they had reached a place near the park the defendant, driving a Ford truck, overtook them, stopped his car, and asked the two girls if they wanted to take a ride, to which they both replied in the negative. The defendant then drove on, and the little girls went on into the park. Soon the defendant returned and again asked the girls to ride. This time they accepted the invitation, and at the suggestion of the defendant the prosecutrix got into the seat with him; as her sister started to get into the rear portion of the truck the car started and she fell out. The prosecutrix asked the defendant to stop, which he refused to do; instead he drove rather rapidly away, going towards the outskirts of town and over into the vicinity of Packingtown. At a place near a culvert or bridge the defendant stopped his car and asked the little girl to get out. This she refused to do, and he again drove on, turning into an intersecting section line road and thence into a field or waste place, where he again stopped and wanted her to get out, which she still refused to do. They were now in a clump of trees near the bank of a creek, when the defendant took the child by force out of the car, stuffed a handkerchief into her mouth, and threw her upon the ground, tore or cut her bloomers off, got astride of her person, and tried to make her be quiet. In the struggle to get away from him she was bruised on various parts of her body and received abrasions about her face where the defendant hammered her with a dry stick in an effort to so frighten her as to prevent further outcries. After a while she told him to stop, that she wanted to tell him something. He released her, and she got up and fled toward the highway, at about the time that Dr. C. E. Barker and a lady companion were approaching in an automobile. This lady had called the doctor's attention to the truck over in the field and to the little girl, who seemed to be in distress. When the doctor arrived at the point where the little girl came onto the highway he

stopped his car and asked her what the trouble was. After getting into his car she related to the doctor, in the presence of the lady, some of the things here related, almost exactly as she later told them on the witness stand.

In the meantime the truck came out of the field into the highway, some distance in advance of Dr. Barker's car. The little girl told the doctor that that was the man who had abused her, whereupon the doctor pursued the truck, both cars driving rapidly for nearly a mile. When the defendant attempted to turn into an intersecting highway, he was going at such a rapid rate of speed that his truck turned over, pinning him underneath. The doctor stopped his car, and two men who were nearby turned the car right side up and released the defendant, who had suffered some physical injuries in the accident. The doctor ordered the defendant taken to a hospital, inquired of the little girl where she lived, and then drove her to the home of her father. The little girl there told her father what she had told the doctor, and the father asked Dr. Barker to take her to the hospital, which was accordingly done. A physical examination there disclosed bruises upon her body, grease and dirt upon her private parts, and abrasions and bruises about her mouth and eyes.

Further evidence on the part of the state disclosed that the defendant was a dealer in secondhand household equipment, particularly stoves, and that he had and used such a car as was described in the state's case; that on this particular afternoon he was seen in the vicinity of the place where the child was picked up by Dr. Barker. The defendant claimed that he was out in that section of the city and beyond in search of secondhand stoves to buy, but denied that he had anything to do with this little girl, and said that he never saw her before the preliminary trial on this charge. He said the overturning of his car was due to his going at a rather high rate of speed

and the blowing out of one of his tires as he applied the brakes to make the turn at a corner. The evidence disclosed that the clothing which the defendant was wearing at that time was black, grimy, and greasy.

The defendant admitted that he had been convicted of three separate felonies, the last of which was on March 6, 1916, carrying a penitentiary sentence of ten years and that at the time of this occurrence he had been released on parole.

A teacher at the school which the prosecutrix attended testified that she had not been truthful on several occasions when interrogated about infractions of school regulations. Several witnesses testified as to the defendant's good character for several years last past.

The defendant claims that the evidence is insufficient to support the verdict; that the prosecutrix was without corroboration, and was in a measure impeached by the evidence of the teacher under whose charge she had been for several months.

A careful analysis of the testimony convinces us that the evidence is sufficient. Unlike many other cases of this character, neither the parents of this little girl, nor any other person, had opportunity to coach the child to make untruthful statements damaging to the defendant before she told her story. The lady first picked up by Dr. Barker almost immediately called his attention to the fact that some child was being hurt or abused; as rapidly as possible they went to where the child was, and the child then and there made explanations in keeping with her testimony as later given at the trial. The defendant came from near where the child came on to the highway, and drove away at the rate of about 35 miles an hour; in such haste, apparently to elude pursuit, that he caused his car to turn over, as before related. The fact that his clothing was

dirty and greasy, that he was unkempt, and all the other circumstances shown, indicate that the child told the truth as nearly as she was able to relate her experience; and her story was sufficiently corroborated by the physical facts and by the testimony of Dr. Barker. The court fairly instructed the jury upon every phase of the law, as raised by the issues, including the lesses offense of assault with intent to rape.

It is contended that there was prejudicial misconduct of counsel for the state in his argument to the jury, in the course of which he made this declaration:

"From the evidence you are guilty; anybody can look in your face and tell you are guilty. You sat there throughout the trial without a blush of shame upon your face for the crime you have committed; you are not a fit character to be turned loose on society."

The defendant objected and excepted to this argument, and requested the trial court to withdraw the remarks thus made from the consideration of the jury. The court sustained the objection, and admonished the state's attorney to desist from further like remarks.

We are not certain but that counsel for the state was properly within his rights in employing the language complained of. The declaration was prefaced by the words, "from the evidence," and the defendant's own testimony disclosed that he was a hardened criminal, having been previously convicted of three felonies, the punishment for which seemed to have had no deterrent influence on his subsequent conduct. Prather v. State, 14 Okla. Cr. 327, 170 P. 1176; Smith v. State, 6 Okla. Cr. 380, 118 P. 1003; Tucker v. State, 33 Okla. Cr. 302, 243 P. 998.

The judgment of the trial court is affirmed.

DOYLE and EDWARDS, JJ., concur.